**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Milton LAVENDER, Defendant–**
**Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Steven H. Lee, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Jose Alfredo Rodriguez, aka Juan**
**Martinez, Defendant–**
**Appellant.**

**Nos. 99–50275, 99–50282, 99–50283.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 2000
(Nos. 99–50275 & 99–50282)

Submitted May 2, 2000 (No. 99–50283)[1]

Filed Aug. 29, 2000

Fed.R.App.P. 34(a)(2).

C. Thomas McDonald, Santa Ana, California, for defendant-appellant Lavender; John W. Barton, Newport Beach, California, for defendant-appellant Lee; James L. Waltz, Laguna Hills, California, for defendant-appellant Rodriguez.

Susan R. Ficcadenti, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

Before: WALLACE, TROTT, and GOULD, Circuit Judges.

WALLACE, Circuit Judge:

Lee, Lavender, and Rodriguez appeal from sentences imposed after they pled guilty to aiding and abetting each other in a bank robbery, in violation of 18 U.S.C. §§ 2(a), 2113(a). They argue against sentence enhancements applied pursuant to United States Sentencing Guideline § 2B3.1(b)(2)(E). The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742, and we affirm.

I

On April 24, 1997, the defendants robbed a Wells Fargo Bank in Buena Park, California. When the van carrying the robbers arrived at the bank, Lee was wearing a dark colored ski mask, with holes cut out for vision and breathing, and a dark colored jogging suit. He jumped out of the van and, with one hand concealed under his jogging suit at stomach level, approached the security guard standing outside of the bank. Lee swore at the guard, pressed something into the guard's back, and ordered him to jog towards the bank entrance. The security guard believed that Lee had pressed a gun into his back. While Lee forced the guard

toward the bank, the guard · stated he "heard [Lee] drop what he had been pressing up against [his] back and it made a metallic sound as it hit the ground." Lee denied having a gun at that time, but admitted to having dropped a screwdriver he was carrying, asserting it was carried in case they needed to steal another car. Based on this conduct, the district court applied the sentence enhancement described in section 2B3.1(b)(2)(E) of the Guidelines: "if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels."

## II

■ We start with the fact that Lee admits that he was carrying a screwdriver during the robbery. Thus, the first issue is whether a screwdriver is properly characterized as a dangerous weapon for sentencing purposes. The district court's conclusion that a particular item falls within the Sentencing Guidelines' definition of "dangerous weapon" is an issue of law that is reviewed de novo. *United States v. Boyd,* 924 F.2d 945, 946–47 (9th Cir.1991). The commentary to section 2B3.1 defines dangerous weapon by adopting the text in the commentary to section 1B1.1: "an instrument capable of inflicting death or serious bodily injury." There is no doubt that a screwdriver can be used to stab someone in the throat or chest, or to gouge out someone's eye, causing serious bodily injury. It was therefore properly categorized by the district court as a dangerous weapon. This straightforward determination comports with our previous rulings on similar potential weapons. *See United States v. Smith,* 905 F.2d 1296, 1300 (9th Cir. 1990) (determining an inoperable gun to be a dangerous weapon because it "can also cause harm when used as a bludgeon"), *superseded on other grounds by amendment to the Guidelines, United States v. Burnett,* 16 F.3d 358, 360 n. 1 (9th Cir. 1994); *United States v. Enos,* 453 F.2d 342, 343 (9th Cir.1972) (upholding a conviction for assault with a dangerous and deadly weapon based on an attack with a "pocketknife" with a "two inch blade").

■ Lee does not dispute that screwdrivers are capable of causing death or serious bodily harm. Rather, he argues that, despite the clear language of the text requiring only "possession," dangerous weapons should be considered dangerous weapons for sentencing purposes only when they are carried with the intent to use them as weapons. Sentencing factors, however, are not separate criminal offenses and as such are not normally required to carry their own mens rea requirements. *See United States v. Sherbondy,* 865 F.2d 996, 1001–02 (9th Cir. 1988). Furthermore, accepting Lee's reasoning—requiring proof of mens rea before allowing enhancements under section 2B3.1(b)(2)(E)—would have an absurd result: future defendants would be able to carry large knives during bank robberies and remain exempt from sentence enhancements so long as they legitimately intended to use their knives only for cutting steaks at post-robbery celebrations. Because Lee possessed a screwdriver during the robbery, and a screwdriver is properly classified as a dangerous weapon, the district court did not err by applying the enhancement to him.

## III

■ After applying the sentence enhancement to Lee, the district court made a further factual finding that Lee's use of a dangerous weapon was foreseeable to Lavender and Rodriguez and applied the same enhancement to them. Lavender and Rodriguez argue that Lee's possession of the screwdriver should not be imputed to them because there is no specific evidence that they knew that he had it or that he was going to have a confrontation with a guard. As Rodriguez asserts, "[w]hatever occurred between the guard and Lee, that momentary conduct occurred on the sidewalk while the robbers were inside the bank and while [I] was waiting in the Jeep."

■ The district court's factual findings in the sentencing phase are reviewed for clear error, *United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir.1999), as is

the district court's determination that a co-conspirator's actions were reasonably foreseeable. *United States v. Willis,* 899 F.2d 873, 874 (9th Cir.1990). The district court examined the evidence and the pre-sentence report and found that the robbery "was coordinated in terms of timing and in terms of role selection and it was planned out what everybody was supposed to do and everybody carefully pursued their role." The district court also found that the robbery was "very carefully ... orchestrated." When co-conspirators are involved in a highly planned operation such as this one, the law assumes that each participant is aware of the others' general plans. *See United States v. Zelaya,* 114 F.3d 869, 871–72 (9th Cir.1997) (collecting cases). The robbers all knew that they were going to have to intimidate any customers, tellers, and guards who were present. No defendant presents any explanation for how Lee would have been expected to subdue the guard other than by showing (or pretending to have) some sort of weapon, as he did. Thus, the district court did not clearly err by finding Lee's use of a dangerous weapon foreseeable to Lavender and Rodriguez.

AFFIRMED.