**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

KYLE JASON KORTE,
        *Defendant-Appellant*.

No. 18-50051

D.C. No.
8:16-cr-00156-
JLS-1

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted February 11, 2019
Pasadena, California

Filed March 15, 2019

Before: Dorothy W. Nelson, Consuelo M. Callahan, and
John B. Owens, Circuit Judges.

Opinion by Judge Owens;
Concurrence by Judge D.W. Nelson

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of the defendant's suppression motions and his convictions for bank robbery in a case in which the defendant, who was on parole during his crime spree, had consented to suspicionless searches of his person, residence, and any property under his control.

Rejecting the defendant's contention that a lawful parole search of his car does not extend to the trunk because the trunk is not "property under his control," the panel held that the parole search of the defendant's trunk was lawful.

Following precedent distinguishing Fourth Amendment rights in the parolee context, the panel held that the warrantless placement of a GPS tracker on the defendant's car did not violate the Fourth Amendment.

The panel held that cell site location information (CSLI) acquired before the Supreme Court issued its decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (holding that the Government must obtain a warrant to access a person's CSLI from a wireless carrier), is admissible under the good-faith exception to the exclusionary rule so long as the Government satisfied the Stored Communications Act's then-lawful requirements. The panel took no stance on the constitutionality of acquiring a parolee's CSLI without a warrant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring in both the reasoning and the result, Judge Nelson wrote separately because she is concerned with the ever "diminishing" reasonable expectation of privacy afforded to probationers and parolees, especially as it relates to digital privacy.

## COUNSEL

H. Dean Steward (argued), Attorney at Law, San Clemente, California, for Defendant-Appellant.

Julia L. Reese (argued), Assistant United States Attorney, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; Lawrence S. Middleton, Assistant United States Attorney, Chief, Criminal Division; Gregory W. Staples, Assistant United States Attorney, Santa Ana Branch Office; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

Defendant Kyle Korte appeals from his convictions for bank robbery. During his crime spree, Korte was on parole and had consented to warrantless, suspicionless searches of his person, residence, and any property under his control. Relying on this parole condition, officers placed a Global Positioning System ("GPS") device on his car and later searched its trunk. Officers also obtained Korte's historical cell site location information ("CSLI") by court order. On appeal, Korte primarily challenges the district court's denial

of his suppression motions as to each of these searches. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In a world of cybercrime and identity theft, Korte stole money the old-fashioned way — he robbed banks. After serving time in state prison for bank robbery, Korte was paroled in August 2016. As a parolee in California, Korte was "subject to search or seizure . . . at any time of the day or night, with or without a search warrant or with or without cause." CAL. PENAL CODE § 3067(b)(3); *see also id.* § 3067(a). On October 25, 2016, Korte acknowledged his parole conditions, including that he was now subject to searches of "[y]ou, your residence, and any property under your control."

In October 2016, the Los Angeles Sheriff's Department ("LASD") began investigating a series of bank robberies. The first robbery took place on October 7. A masked robber entered a bank and demanded "all your hundreds." The frightened teller, protected by bulletproof glass, activated the silent alarm and retreated to a back office. The robber left with no money. On October 12, the masked robber targeted another bank, this time brandishing a toy gun. He was more successful this go-around, escaping with $1,600. He then hit two more banks on October 27. Again displaying the toy gun, the robber pocketed $2,200 and $7,000. In total, the masked robber stole less than $11,000 — not a Neil McCauley heist by any means.

Working with LASD, the Federal Bureau of Investigation ("FBI") began to suspect that Korte was the masked robber. Surveillance video from one of the robberies showed a car registered to the address that Korte provided to his parole officer. An LASD officer who saw video of the

masked robber also reported that the individual resembled Korte, who the officer knew was on parole for bank robbery.

On November 4, 2016, without a warrant or Korte's consent, LASD placed a GPS tracking device on Korte's car and periodically monitored the vehicle's movements over the next six days. That same day, the Government obtained a court order under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), to acquire Korte's CSLI. This information placed Korte's cell phone near three of the four banks at the time of the respective robberies.

On November 10, 2016, LASD learned that the FBI had obtained an arrest warrant for Korte. Officers followed Korte as he drove from his home to a bank and parked nearby, seeming to surveil his next target. An officer saw Korte open the car's trunk and place something inside. Shortly thereafter, they arrested Korte and searched the car. The officers' search of the trunk revealed the toy gun used during the three armed robberies and the shirt Korte had been wearing while casing the bank just prior to his arrest.

A grand jury indicted Korte for one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a) and three counts of bank robbery in violation of 18 U.S.C. § 2113(a), (d). Korte pled not guilty and moved to suppress (1) the evidence found in his car's trunk, (2) the information derived from the GPS tracker on his car, and (3) his CSLI. The district court denied all three suppression motions. The court reasoned that Korte's parole status permitted the warrantless search of the trunk and placement of the GPS tracker on his car. As for the CSLI, it held that even if the acquisition of this information violated Korte's Fourth Amendment rights, *see Carpenter v. United States*, 138 S. Ct. 2206 (2018), the good-faith exception clearly applied based on the case law at that time.

Korte went to trial. As to Count 1 — the unsuccessful robbery — the bank teller testified that even though bulletproof glass separated her from the robber and she saw no weapon, she was nevertheless "[k]ind of panicked," "[s]hocked," and "[s]cared." Korte filed a motion for a judgment of acquittal, under Federal Rule of Criminal Procedure 29, focusing on Count 1. The district court rejected his argument that the Government failed to prove the element of "force and violence, or by intimidation," as 18 U.S.C. § 2113(a) requires. Citing the teller's "testimony with regard to a mask and the demand," the court found sufficient evidence of "intimidation" to send the matter to the jury.

The jury returned a guilty verdict as to all four counts. Korte was sentenced to 210 months in prison.

## II. DISCUSSION

We review de novo the denial of Korte's suppression motions. *See United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017) (per curiam). We address each search — of his car's trunk, the GPS tracker on his car, and the acquisition of his CSLI — in turn.

## A. Search of the Trunk

We first examine whether Korte's parole-search condition authorized the warrantless search of his car's trunk. *See United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017) ("A search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment.").

California Penal Code section 3067(b)(3) provides that every parolee "is subject to search or seizure . . . at any time

of the day or night, with or without a search warrant or with or without cause." In *Samson v. California*, 547 U.S. 843, 846 (2006), the United States Supreme Court reviewed California's parole-search condition to determine "whether a suspicionless search, conducted under the authority of [section 3067], violates the Constitution." The Court first reasoned that "parole is more akin to imprisonment." *Id*. at 850. Because parolees "have severely diminished expectations of privacy by virtue of their status alone" — even less than probationers — and because "[t]he State's interests" in supervising parolees and reducing recidivism "are substantial," the Court upheld California's parole-search condition.[1] *Id*. at 852–53.

Korte does not — and cannot — argue that officers unlawfully searched his car. He admits that he rented the car and referred to it as "my car." As "property under [his] control," California's parole-search condition authorized the

---

[1] There are two limitations on this condition. First, the officer conducting the search must know at the time that the individual is currently on parole. *See Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005). Second, the search cannot be "arbitrary, capricious, or harassing." *See* CAL. PENAL CODE § 3067(d) ("It is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment."); *see also Samson*, 547 U.S. at 856 ("The concern that California's suspicionless search system gives officers unbridled discretion to conduct searches . . . is belied by California's prohibition on 'arbitrary, capricious or harassing' searches." (citations omitted)).

Here, it is undisputed that the officers knew that Korte was on parole, and there is no evidence the officers engaged in an arbitrary, capricious, or harassing search. Nor does Korte contend he was unaware of the parole-search condition. *See People v. Lilienthal*, 587 P.2d 706, 711 (Cal. 1978) ("The condition itself provides general notice to a defendant that he or his belongings may be subjected to warrantless searches.").

warrantless search of it. *See, e.g.*, *United States v. Caseres*, 533 F.3d 1064, 1075–76 (9th Cir. 2008) (explaining that a search of the parolee's car would have been lawful if the officer had known that the defendant was on parole).

Yet, Korte contends that a lawful parole search of his car does not extend to the trunk because the trunk is not similarly "property under [his] control." We reject his narrow interpretation of this condition. Property is subject to search when a parolee "exhibit[s] a sufficiently strong connection to [the property in question] to demonstrate 'control' over it." *United States v. Grandberry*, 730 F.3d 968, 980 (9th Cir. 2013) (defining "property under [a parolee's] control"); *see also Cervantes*, 859 F.3d at 1183 (explaining that having a key to and belongings inside a hotel room sufficiently demonstrate control, even if the room is co-occupied). Consistent with our understanding of the condition, the Supreme Court of California explained that a parolee controls property based on "the nexus between the parolee and the area or items searched," including the "nature of that area or item" and "how close and accessible the area or item is to the parolee." *People v. Schmitz*, 288 P.3d 1259, 1270 (Cal. 2012) (holding that a parolee, who is only a passenger in a third-party's vehicle, is in control of areas within his reach in the passenger compartment).

Korte's uncontested control over the car was sufficient to permit a warrantless search of its trunk. In any event, his conduct also illustrated a sufficiently close nexus to the trunk itself. Officers observed him putting things inside the trunk.

Permitting a warrantless search of the trunk of a parolee's car is also consistent with broader Fourth Amendment precedent. Generally, a lawful search of a fixed space or premise extends to its entire area, whether or not that requires opening a confined space: "[N]ice distinctions

between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross*, 456 U.S. 798, 821 (1982). This reasoning applies to a car's trunk. *See, e.g.*, *id.* at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011) ("[I]f a law enforcement officer has probable cause to search a vehicle, that probable cause extends to all contents in the vehicle that could be connected to the suspected activity."); *United States v. McWeeney*, 454 F.3d 1030, 1035 (9th Cir. 2006) (holding that consent to search a defendant's car extends to the trunk). We also note that Korte's proposed distinction between a car and trunk was already rejected by the Supreme Court of California in the context of a probationer – who has more Fourth Amendment protection than Korte as a parolee. *See Lilienthal*, 587 P.2d at 711 ("We conclude that the officers were justified in searching defendant's car trunk pursuant to defendant's consent to warrantless searches as a condition of his probation.").

As property under his control, Korte fails to explain how searching his car's trunk would offend the Fourth Amendment when a warrantless search of his home — the apex of constitutionally protected places — would not. *See United States v. Lopez*, 474 F.3d 1208, 1213–14 (9th Cir. 2007) (upholding the warrantless search of a parolee's home), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam); *see also Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("But when it comes to the Fourth Amendment, the home is first among

equals."). The district court summed it up well: "If an individual's residence falls within the scope of an appropriate search under the parolee provisions, how would a trunk not?"

Accordingly, the district court correctly held that the search of Korte's trunk was a lawful parole search.

## B. Placement and Use of the GPS Tracker

We next decide whether Korte's parole-search condition permitted the warrantless placement of a GPS device on his car and the subsequent surveillance of his car's movements.

Installing a GPS tracker on a car constitutes a search, typically requiring a warrant. *See United States v. Jones*, 565 U.S. 400, 404 (2012). The application of this principle to a parolee's car, however, is less clear. While the parties agree that placing the device on Korte's car was a search under the Fourth Amendment, they disagree on whether doing so without a warrant offends the Constitution. In light of *Samson*'s strong pronouncement that parolees in California have very limited Fourth Amendment rights, 547 U.S. at 851–52, we agree with the district court that this was a lawful parole search.

Our decision in *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017), instructs us not to necessarily apply a newly established Fourth Amendment protection to parolees. In *Riley v. California*, 573 U.S. 373, 386 (2014), the United States Supreme Court held that the warrantless search of an arrestee's cell phone was unlawful. The Court emphasized the significant privacy intrusion that arose when searching a person's cell phone. *Id.* at 393; *see also Johnson*, 875 F.3d at 1274 (noting that *Riley* was premised on "privacy interests implicated in cell phone searches [being] particularly

acute"). Cell phones, the Supreme Court said, are now "a pervasive and insistent part of daily life" that "place vast quantities of personal information literally in the hands of individuals." *Riley*, 573 U.S. at 385–86. Because cell phones "collect[] in one place many distinct types of information . . . that reveal much more in combination than any isolated record," searching a cell phone would give law enforcement the unparalleled ability to reconstruct "[t]he sum of an individual's private life." *Id*. at 394.

Despite the Court's cautionary words, we held that *Riley* did not apply to parolees. *Johnson*, 875 F.3d at 1275; *but see United States v. Lara*, 815 F.3d 605, 612 (9th Cir. 2016) (applying *Riley* to the warrantless search of a probationer's cell phone). Rather, noting that "the balance of privacy interests and factual circumstances in this context are different," we permitted the warrantless search of a parolee's cell phone. *Johnson*, 875 F.3d at 1273.

In light of our ruling in *Johnson*, we are hard-put to say that the warrantless placement of a GPS tracker on a parolee's car is impermissible. If an officer can conduct a warrantless search of a parolee's cell phone — an object that is "[t]he sum of an individual's private life," *Riley*, 573 U.S. at 394 — placing a GPS device on a parolee's car cannot logically demand more constitutional protection. Although a GPS tracker may create a summary of a parolee's public movements, it offers none of the "vast quantities of personal information" that a cell phone does. *Id.* at 386.

The State's interest in supervising parolees is also particularly strong here. *See Samson*, 547 U.S. at 853 (referencing the State's "substantial" interests in "reducing recidivism," "promoting reintegration," and deterring future criminal conduct). Tracking a parolee's movements by car can be a critical tool for monitoring this group. Its value is

well illustrated here: Korte returned to a life of crime just months after his release from prison, but LASD was able to investigate Korte and prevented other armed robberies by tracking his movements. In *Johnson*, we explained that requiring officers to obtain a warrant before searching a parolee's cell phone "would often undermine the state's ability to supervise effectively." 875 F.3d at 1274. We have similar concerns with requiring officers to obtain a warrant before tracking a parolee's vehicular movements.

Lastly, we note that our decision aligns with another court's interpretation of California's parole-search condition. In *People v. Zichwic*, 114 Cal. Rptr. 2d 733, 738–39 (Ct. App. 2001), the California Court of Appeal considered the warrantless placement of an electronic monitoring device on a parolee's car. It held that even "assum[ing] that attaching an electronic tracking device to the undercarriage of defendant's truck constituted a search, it was authorized by defendant's parole search condition." *Id.* at 740. Granted, *Zichwic* differs in that it considered the use of a beeper, *id.* at 738, rather than a GPS device — investigatory methods treated differently under the Fourth Amendment. *Compare United States v. Karo*, 468 U.S. 705, 713 (1984) ("[N]o Fourth Amendment interest . . . was infringed by the installation of the beeper."), *with Jones*, 565 U.S. at 409 n.6 (noting that GPS tracking is a more intrusive law enforcement practice than a beeper).

Nonetheless, we believe that *Zichwic* is, at minimum, informative. Although it was decided almost two decades before *Jones*, its holding was unaffected because it had assumed that placing a tracking device on a car constituted a search. *Zichwic*, 114 Cal. Rptr. 2d at 740. The Supreme Court of California has not since interpreted the parole-search condition differently. And, while a beeper and GPS

device might differ in their tracking capabilities, the court in *Zichwic* at least concluded, as we do, that the State's need for electronically monitoring a parolee's movements outweighs the privacy interests at issue. *Id.* at 739–40.

We do not disregard the importance of *Jones.* We acknowledge that "GPS monitoring generates a precise, comprehensive record of a person's public movements." *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring). However, in following precedent distinguishing Fourth Amendment rights in the parolee context, we hold that the warrantless placement of a GPS tracker on Korte's car does not violate the Fourth Amendment.

## C.  Warrantless CSLI Acquisition

Finally, we consider whether the district court should have excluded the CSLI evidence, acquired without a warrant, as a Fourth Amendment violation. The Supreme Court granted certiorari to resolve the constitutionality of warrantless CSLI acquisition before the district court could rule on Korte's suppression motion. *Carpenter v. United States*, 137 S. Ct. 2211 (2017) (mem.). As such, the district court did not address the constitutional issue before it, but denied Korte's motion under the Fourth Amendment's good-faith exception. We, therefore, consider only a narrow issue: whether the good-faith exception applies to the warrantless acquisition of a defendant's CSLI before *Carpenter v. United States*, 138 S. Ct. 2206 (2018).[2]

---

[2] We take no stance on the constitutionality of acquiring a parolee's CSLI without a warrant.

In *Carpenter*, the Supreme Court summarized CSLI and how this technology permits almost real-time compilation of a person's location during any given period:

> Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site. Most modern devices . . . tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's features. Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI).

*Id.* at 2211. The Court wrestled with how to apply this "new phenomenon" under the Fourth Amendment, *id.* at 2216, noting that it "does not fit neatly under existing precedents," *id.* at 2214. It ultimately concluded, however, that the Government must obtain a warrant to access a person's CSLI from a wireless carrier, and could no longer rely on a court order under § 2703(d) of the SCA. *Id.* at 2221.

Although the Government obtained Korte's CSLI without a warrant, he is not automatically entitled to relief. *See United States v. Leon*, 468 U.S. 897, 906–07 (1984) (explaining that whether there was a Fourth Amendment violation and "[w]hether the exclusionary sanction is appropriately imposed" are separate questions). *Illinois v. Krull*, 480 U.S. 340, 342, 350 (1987), established an important exception to the exclusionary rule: Evidence obtained by the Government, acting in "objectively reasonable reliance upon a *statute*" that is "ultimately found to violate the Fourth Amendment," does not require suppression.

Because we find the Government reasonably relied on the SCA when it obtained Korte's CSLI, we affirm the district court's application of the Fourth Amendment's good-faith exception. *See also United States v. Camou*, 773 F.3d 932, 944 (9th Cir. 2014) (placing the burden on the government to prove it acted in good faith). Before *Carpenter*, the SCA authorized a government entity to request "a provider of electronic communication service . . . to disclose a record or other information pertaining to a subscriber to or a customer of such service." 18 U.S.C. § 2703(c)(1). The statute explicitly authorized retrieval of these records by court order if the Government "offer[ed] specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation" — a more lenient standard than probable cause. *Id.* § 2703(d).

When the Government obtained Korte's CSLI — before *Carpenter* was decided — acting by court order was still authorized. Moreover, we cannot say that the Government had any reason to doubt the SCA's constitutionality, such that it may have been acting in bad faith. *See Krull*, 480 U.S. at 355 ("[T]he standard of reasonableness . . . is an objective one."). CSLI remained a relatively novel form of evidence. And, although we had not yet commented on the constitutionality of warrantless CSLI acquisition, a number of our sister circuits had. All had affirmed the SCA's constitutionality under the Fourth Amendment. *See United States v. Gilton*, No. 16-10109, slip op. at 20 (9th Cir. Mar. 4, 2019) (explaining that, at least as of 2012, "the prevailing belief" was "that CSLI data was not protected by the Fourth Amendment"); *see also United States v. Graham*, 824 F.3d 421, 424 (4th Cir. 2016) (en banc); *United States v. Carpenter*, 819 F.3d 880, 884 (6th Cir. 2016); *United States*

*v. Davis*, 785 F.3d 498, 511 (11th Cir. 2015) (en banc); *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013); *In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 313 (3d Cir. 2010).

As explained in *Krull*, it is hardly objectively unreasonable to rely on a then-lawful statute when courts were upholding it or similar legislative schemes.  480 U.S. at 358–59.  Officials should not be "expected to question the judgment of the legislature that passed the law," particularly when confronted with the pattern of judicial holdings as existed here.  *Id.* at 350.  Any "defect in the [SCA]," therefore, "was not sufficiently obvious so as to render [the Government's] reliance upon the statute objectively unreasonable."  *Id.* at 359.  The Supreme Court's own sharply divided opinion in *Carpenter* brings this point to bear.  *See* 138 S. Ct. at 2217 (explaining that the CSLI issue presents "novel circumstances"); *see also id.* at 2223 (referring to the majority's decision as a "stark departure from relevant Fourth Amendment precedents") (Kennedy, J., dissenting).

Moreover, our application of *Krull* is anything but novel. Several other circuits have already invoked this good-faith exception when presented with similar facts.  *See United States v. Goldstein*, 914 F.3d 200, 203–05 (3d Cir. 2019); *United States v. Curtis*, 901 F.3d 846, 848–49 (7th Cir. 2018); *see also United States v. Chambers*, No. 16-163-cr, 2018 WL 4523607, at *2 (2d Cir. Sept. 21, 2018) (explaining that "the authorities sought information from third parties by complying with the SCA" and "[r]eliance on a federal statute gives rise to a presumption of good faith" (citing *Krull*, 480 U.S. at 349)).  Others have analyzed the issue similarly,

although without directly invoking *Krull*. *See United States v. Joyner*, 899 F.3d 1199, 1205 (11th Cir. 2018) (per curiam) (noting that "the Government complied with the requirements of the SCA in obtaining the orders to compel cell site records" while it was still lawful); *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (refusing to apply the exclusionary rule because "investigators in this case reasonably relied on court orders and the [SCA] in obtaining the cell site records"). Similarly, we recently refused to exclude CSLI data obtained in good-faith reliance on a warrant, later deemed to be defective. *Gilton*, slip op. at 21.

Finally, we note that our decision accords with the exclusionary rule's limited purpose to deter future Fourth Amendment violations, rather than remedy the rights of a single aggrieved party. *See United States v. Calandra*, 414 U.S. 338, 347–48 (1974); *see also Krull*, 480 U.S. at 347. For us to exclude CSLI, obtained in good faith based on a then-lawful legislative scheme, would do nothing to prevent future Fourth Amendment violations. *See Davis v. United States*, 564 U.S. 229, 236–37 (2011) ("The [exclusionary] rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations."). With the exclusionary rule as "our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), we hold that CSLI acquired pre-*Carpenter* is admissible — so long as the Government satisfied the SCA's then-lawful requirements — under *Krull*'s good-faith exception.

## III.   CONCLUSION

For the reasons provided above, we affirm the district court's denial of Korte's suppression motions and his convictions for bank robbery.**[3]**

**AFFIRMED.**

D.W. NELSON, Circuit Judge, concurring:

I concur in both the reasoning and result—the good-faith exception saves the government's conduct here. I write separately, however, because I am concerned with the ever "diminishing" reasonable expectation of privacy afforded to probationers and parolees, especially as it relates to their digital privacy.

In *Samson v. California*, the United States Supreme Court seemingly established a ceiling on a parolee's expectation of privacy. 547 U.S. 843, 846 (2006). The Supreme Court, however, did not set a floor. Nor did it offer a limiting principle. It is not surprising, therefore, that in the decade or so since *Samson*, our Court has further diminished

---

**[3]** Korte also argues that his Count 1 conviction for attempted bank robbery under 18 U.S.C. § 2113(a) cannot stand because there was insufficient evidence of "intimidation." Longstanding precedent forecloses this argument. Korte's demand for money and use of a mask satisfies "intimidation" under § 2113(a). *See, e.g.*, *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) ("[T]he threats implicit in [defendant's] written and verbal demands for money provide sufficient evidence of intimidation to support the jury's verdict."); *United States v. Bingham*, 628 F.2d 548, 549 (9th Cir. 1980) ("[E]xpress threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s] . . . have never been held to be requirements for a § 2113(a) conviction.").

probationers' and parolees' expectations of privacy. *See, e.g.*, *United States v. Johnson*, 875 F.3d 1265, 1275 (9th Cir. 2017) (holding that *Riley*'s prohibition on warrantless phone searches does not apply to parolees); *United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017) (holding that a search of a parolee that complies with the terms of a valid search condition is usually reasonable); *United States v. Grandberry*, 730 F.3d 968, 980 (9th Cir. 2013) (defining the types of property under a parolee's control that are searchable without a warrant); *United States v. Lopez*, 474 F.3d 1208, 1213–14 (9th Cir. 2007) (upholding the warrantless search of a parolee's home).

Justice Stevens, in his *Samson* dissent, stated that the Supreme Court's precedents did not support "a regime of suspicionless searches. . . untethered by any procedural safeguards, by law enforcement personnel who have no special interest in the welfare of the parolee or probationer." *Samson*, 547 U.S. at 857 (Stevens, J., dissenting). He suggested an individualized suspicion requirement to prevent what he warned would be an "unprecedented curtailment of liberty." *Id.* at 866. His words proved to be a prescient warning.

Our physical and digital spaces continue to merge with the creation of new technologies. The individual and societal benefits of these technologies come with increased risks— our devices and third parties store ever more deeply revealing and private information that is easily accessed by law enforcement. The Supreme Court recently reaffirmed that the "progress of science" should not come at the expense of Fourth Amendment protections. *See Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018) (quoting *Olmstead v. United States*, 277 U.S. 438, 474 (1928)). I believe,

therefore, it is time to revisit the degree of protection the Fourth Amendment affords probationers and parolees.