**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

STEVEN CERVANTES,
*Defendant-Appellant.*

No. 15-50459

D.C. No.
8:15-cr-00006-DOC-1

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted January 13, 2017
Pasadena, California

Filed June 19, 2017
Amended September 12, 2017

Before: Stephen S. Trott, M. Margaret McKeown,
and Paul J. Watford, Circuit Judges.

Order;
Opinion by Judge Watford

# SUMMARY[*]

## Criminal Law

The panel filed (1) an order amending its opinion and denying a petition for panel rehearing and rehearing en banc and (2) an amended opinion affirming a conviction and sentence in a case in which police officers conducted a warrantless, suspicionless search of the defendant's hotel room pursuant to a condition of the mandatory supervision the defendant was serving for the final year of his three-year California county jail sentence.

The panel held that for Fourth Amendment purposes, mandatory supervision is more akin to parole than probation, and that the search was authorized under the search condition because the officers had probable cause to believe that the hotel room constituted "premises" under the defendant's control. Rejecting the defendant's contention that the officers violated California's prohibition against arbitrary, capricious, or harassing searches, the panel noted that, without something more, a suspicionless search is lawful if authorized by a parolee's search condition. Concluding that no Fourth Amendment violation was shown, the panel held that the district court properly denied the defendant's motion to suppress the evidence found in his hotel room.

The panel held that the defendant had adequate notice of a suspicionless search condition of supervised release imposed in connection with his federal sentence, and that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

facts of the case justified the district court's belief that the condition would be necessary to mitigate the exceptionally high risk that the defendant would re-offend during his term of supervised release.

---

## COUNSEL

Michael Tanaka (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Mark Takla (argued), Assistant United States Attorney, Terrorism and Export Crimes Section; Patricia A. Donahue, Chief, National Security Division; United States Attorney's Office, Santa Ana, California; for Plaintiff-Appellee.

---

## ORDER

The opinion filed on June 19, 2017, and published at 859 F.3d 1175, is amended as follows:

At 859 F.3d at 1179, in the sentence beginning with the phrase, <Following a stipulated-facts bench trial> delete the following:

<stipulated-facts>

With this amendment, the panel unanimously votes to deny the petition for panel rehearing. Judges McKeown and Watford vote to deny the petition for rehearing en banc, and Judge Trott so recommends. The full court has been advised

of the petition for rehearing en banc, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for panel rehearing and rehearing en banc, filed August 2, 2017, is **DENIED**.

No further petitions for panel rehearing or rehearing en banc will be entertained.

---

**OPINION**

WATFORD, Circuit Judge:

Steven Cervantes was convicted in California state court of several non-violent felonies and sentenced to three years in county jail. He served the last year of that sentence on "mandatory supervision," a form of conditional release that is similar to parole. As a condition of mandatory supervision, Cervantes agreed to submit to warrantless, suspicionless searches of his person, his residence, and any "premises" under his control. We must decide whether a warrantless, suspicionless search of a hotel room Cervantes rented with his girlfriend violated the Fourth Amendment.

I

In 2014, Cervantes pleaded guilty to felony counterfeiting and drug offenses in California state court. His plea agreement called for him to receive a "divided" (or "split") sentence under California Penal Code § 1170(h)(5). That provision, enacted as part of California's Criminal Justice Realignment Act of 2011, requires certain low-level felony offenders to serve their terms of imprisonment in county jail

rather than state prison.  *See People v. Scott*, 58 Cal. 4th 1415, 1418–19 (2014).  Section 1170(h)(5) authorizes the sentencing court to "suspend execution of a concluding portion of the term for a period selected at the court's discretion."  Cal. Penal Code § 1170(h)(5)(A).  The suspended portion of the term is known as "mandatory supervision," and it commences upon the defendant's release from custody.  § 1170(h)(5)(B).  Under the statute, offenders on mandatory supervision are supervised in the same manner as offenders on probation:  "During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court."  *Id.*[1]

The state court sentenced Cervantes to three years in county jail.  Pursuant to § 1170(h)(5), the court divided the sentence into two years of imprisonment followed by one year of mandatory supervision.  As part of his plea bargain, Cervantes agreed to abide by certain conditions during the period of mandatory supervision, each of which the court formally imposed at sentencing.  One of those conditions was a warrantless, suspicionless search condition, which provided as follows:  "Submit your person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion."

---

[1] We have quoted the current version of the statute.  The version in effect at the time of Cervantes' sentencing was slightly different, but the differences are immaterial for our purposes.

In 2015, while serving his term of mandatory supervision, Cervantes engaged in the conduct that led to his convictions in this case. He and his girlfriend, Samanthe Farish, were stopped by a police officer in Huntington Beach, California, for jaywalking. In response to the officer's questions, Cervantes told the officer that he was on "probation" and subject to a search condition. The officer obtained identification from Cervantes and Farish, performed a records check, and confirmed that Cervantes was indeed on "probation" (actually mandatory supervision) and subject to a search condition.

The officer searched Cervantes' person and found a room key to the Ayres Hotel in his pocket. Cervantes explained that he and Farish were renting a room on the third floor of the hotel, which was located a little less than two miles away. Cervantes told the officer that he could not remember the room number and that his personal belongings were in the room. Nothing found during the search of Cervantes' person or disclosed during questioning gave the officer any reason to suspect that Cervantes was engaged in criminal activity.

The officer let Cervantes and Farish go, without citing them for jaywalking. However, unbeknownst to Cervantes or Farish, the officer immediately drove to the Ayres Hotel to search their room without obtaining a warrant. The officer believed he had the authority to conduct this warrantless, suspicionless search under the terms of Cervantes' search condition.

When the officer and two of his colleagues arrived at the hotel, they spoke to a front-desk employee, who confirmed that Farish had checked in with a male guest and rented a room on the third floor using her credit card. Hotel

employees let the officers into the room; Cervantes and Farish were still out. The officers searched the room and its contents, except for any items that appeared to belong to a woman. In plain view, they found counterfeit currency in various stages of production and the equipment used to make it. Shortly thereafter, officers located Cervantes inside a Walgreens pharmacy and placed him under arrest.

The United States charged Cervantes with unlawfully possessing counterfeit currency and images of counterfeit currency, in violation of 18 U.S.C. §§ 472 and 474. He moved to suppress the evidence seized from his hotel room on the ground that the warrantless, suspicionless search of the room violated the Fourth Amendment. The district court denied the motion, concluding that Cervantes' search condition authorized the search and hence rendered it reasonable.

Following a bench trial, the district court found Cervantes guilty as charged. The court sentenced him to 21 months of imprisonment followed by five years of supervised release. As a condition of supervised release, the court required Cervantes to submit to warrantless, suspicionless searches of his person and property.

II

On appeal, Cervantes renews his contention that the warrantless, suspicionless search of his hotel room violated the Fourth Amendment. As it did below, the government defends the legality of the search primarily by relying on the search condition imposed during Cervantes' term of mandatory supervision.

A

For Fourth Amendment purposes, the Supreme Court has divided offenders subject to search conditions into two categories: those on probation and those on parole. Generally speaking, parolees are entitled to less protection under the Fourth Amendment than probationers. *Samson v. California*, 547 U.S. 843, 850 (2006). That is primarily because the State has a stronger interest in supervising parolees than it does probationers, given the more serious nature of the offenses parolees have committed and the more serious risk of recidivism they pose. *Id.* at 853–55; *see also id.* at 862 (Stevens, J., dissenting). A court's first task is usually to determine which category an offender falls within, since that determination will dictate the level of Fourth Amendment protection he receives.

Mandatory supervision is neither probation nor parole; on the continuum of punishments, it falls somewhere in between. That means we have two options here: We can create a new third category of offenders altogether, or we can decide that mandatory supervision is more akin to either probation or parole and proceed with the analysis under the existing legal framework.

We do not think creating a new category makes sense. The gap between the Fourth Amendment rights enjoyed by probationers as opposed to parolees is not wide to begin with. Creating a third category of offenders with a third set of rights wedged somewhere in the middle would further complicate this area of the law without returning much in the way of offsetting benefits.

We are thus left to decide whether mandatory supervision is more akin to probation or parole, a distinction that could prove important under our circuit's case law. We have held that warrantless, suspicionless searches of a parolee's residence—the domain entitled to greatest Fourth Amendment protection—can be reasonable if the search is authorized by the terms of the parolee's search condition. *United States v. Lopez*, 474 F.3d 1208, 1213–14 (9th Cir. 2007), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc). We have held the same with respect to probationers, but we expressly limited our holding to offenders who are on probation for a violent felony. *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013); *see United States v. Lara*, 815 F.3d 605, 609–10 (9th Cir. 2016). Cervantes was on mandatory supervision for non-violent felonies, so deciding whether mandatory supervision should be treated like probation rather than parole could make a difference here.

Although the issue is admittedly a close one, for Fourth Amendment purposes we think mandatory supervision is more akin to parole than probation. Parole involves "release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Samson*, 547 U.S. at 850 (internal quotation marks omitted). An offender on parole is still serving the sentence of imprisonment imposed. He is simply serving the tail end of that sentence at liberty, subject to whatever conditions of supervision the court deems necessary to protect the public and promote rehabilitation. The same is true of mandatory supervision. Under § 1170(h)(5), a defendant is typically sentenced to a term of imprisonment in county jail. The concluding portion of that term is served at liberty on mandatory supervision, subject to conditions

imposed by the court. If the defendant violates the conditions of supervision, he may be returned to county jail for whatever period remains unserved on his original sentence. *People v. Catalan*, 228 Cal. App. 4th 173, 182 (2014). Parole has traditionally operated in the same fashion. *Morrissey v. Brewer*, 408 U.S. 471, 478–79 (1972); *United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990).

Offenders placed on mandatory supervision differ in a fundamental way from those placed on probation. Under California law, a sentence of probation is considered an act of clemency available only when the court determines that mitigating facts relating to the defendant's crime or background warrant withholding the punishment otherwise prescribed by law. Cal. Penal Code § 1203(b)(3); Cal. Rule of Court 4.414. Probation is imposed "in lieu of punishment," *People v. Howard*, 16 Cal. 4th 1081, 1092 (1997), and is reserved for offenders "whose conditional release into society poses minimal risk to public safety and promotes rehabilitation." *People v. Welch*, 5 Cal. 4th 228, 233 (1993). For that reason, the State's interest in supervising probationers is less weighty than it is with respect to offenders who are sentenced to a term of imprisonment.

The State's interest in supervising offenders placed on mandatory supervision is considerably stronger than its interest in supervising probationers. A defendant receives mandatory supervision as part of a sentence of imprisonment, only after a court determines that a sentence of probation is *not* appropriate. *People v. Martinez*, 226 Cal. App. 4th 759, 763 (2014). In other words, a court must first conclude that the facts relating to the defendant's crime or criminal background are sufficiently aggravated to warrant imprisonment as opposed to probation, a judgment that itself

indicates the defendant "poses a significantly greater risk to society" than offenders placed on probation. *People v. Burgener*, 41 Cal. 3d 505, 533 (1986), *overruled on other grounds by People v. Reyes*, 19 Cal. 4th 743 (1998). Thus, like parole, mandatory supervision is "more akin to imprisonment than probation is to imprisonment," *Samson*, 547 U.S. at 850, and the State's interest in supervising offenders placed on mandatory supervision is comparable to its interest in supervising parolees. California courts concur: They have held that a split sentence under § 1170(h)(5) is "akin to a state prison commitment," and that mandatory supervision is therefore "more similar to parole than probation." *Martinez*, 226 Cal. App. 4th at 763 (quoting *People v. Fandinola*, 221 Cal. App. 4th 1415, 1422–23 (2013)).

Given the similarities between mandatory supervision and parole, and the State's comparably weighty interest in supervising offenders placed on both forms of supervision, we conclude that the Fourth Amendment analysis in this case is governed by the line of precedent applicable to parolees.

B

We turn next to the question whether Cervantes' search condition rendered the warrantless, suspicionless search of his hotel room reasonable under the Fourth Amendment.

Parolees who are subject to a warrantless, suspicionless search condition have "severely diminished expectations of privacy by virtue of their status alone." *Samson*, 547 U.S. at 852. And given the high rate of recidivism for parolees, the State's interest in supervising them is "overwhelming." *Id.* at 853. As a result, the Supreme Court has held that a

suspicionless search of a parolee's person, when conducted in accordance with the "clear and unambiguous" terms of a lawfully imposed search condition, will generally be deemed reasonable under the Fourth Amendment. *Id.* at 852–54; *see Lopez*, 474 F.3d at 1213–14 (extending *Samson*'s reasoning to suspicionless searches of a parolee's residence). Our main task is to determine whether the search of Cervantes' hotel room was in fact authorized by the clear and unambiguous terms of his search condition; if so, the search will likely be deemed reasonable.

Cervantes' search condition authorized warrantless, suspicionless searches of his "residence" and any "premises" under his control. As an initial matter, we do not think the hotel room can qualify as Cervantes' "residence." In *United States v. Franklin*, 603 F.3d 652 (9th Cir. 2010), we held that a motel room qualified as a probationer's residence, but the probationer in that case was otherwise homeless so it made sense to regard his temporary quarters at the motel as his residence. *Id.* at 654, 657. Here, Cervantes had a permanent residence elsewhere, and he told the officer that. A probationer or parolee would reasonably understand the term "residence," when used in a search condition, to mean the place where he lives at the time of the search. He would not understand the term to encompass a place where he is merely a temporary overnight guest.

The search at issue here was authorized under Cervantes' search condition only if the hotel room can be deemed "premises" under his control. The term "premises" is not defined, but it is commonly understood to mean a building or part of a building. Because the search condition also covers "residence," though, we think "premises" must be read to refer to a building other than a residence. That reading is

necessary both to avoid rendering one of the terms of the search condition superfluous and to avoid undercutting our holding in *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc). In *Motley*, we held that if the location to be searched qualifies as a residence, officers must have probable cause to believe that the parolee himself lives there. We imposed that requirement to protect the privacy interests of third parties residing at the home or apartment to be searched. *Id.* If officers lack probable cause to believe that the parolee lives at the home or apartment to be searched, they may not rely instead on the "premises" clause on the theory that the residence constitutes "premises" under the parolee's control. Permitting that result would create an unwarranted end run around the probable-cause-as-to-residence requirement we established in *Motley*. *See United States v. Grandberry*, 730 F.3d 968, 981 (9th Cir. 2013) (rejecting similar attempt to rely on search condition's "property" clause to justify search of a residence).

A hotel room is not ordinarily a residence and is part of a building, so it fits comfortably within the meaning of "premises." The remaining question is whether the room was under Cervantes' control. For the same reason we established the probable-cause-as-to-residence requirement in *Motley*, we think the officers needed to have probable cause (as opposed to reasonable suspicion) to believe that the hotel room was under Cervantes' control. As in the residence context, the privacy interests of third parties will often be invaded when officers search a building other than a residence without first obtaining the consent of the occupants or a warrant. To avoid unduly impinging upon those privacy interests, officers must be reasonably certain that the premises they seek to search are

in fact under the parolee's control. The probable cause standard embodies the appropriate degree of certainty required in this context, just as it does in the residence context. *See Motley*, 432 F.3d at 1080.

Did the officers have probable cause to believe that the hotel room was under Cervantes' control? We think they did, based on the combination of facts present here. Most significantly, Cervantes told the officers that he and Farish were renting the room together. True, she paid for the room with her credit card, but she and Cervantes checked in together as a couple, as co-occupants. In that sense, the room was as much his as it was hers. That fact was confirmed by Cervantes' possession of a key to the room, and by Cervantes' informing the police that his belongings were inside the room. These facts, in combination, gave the officers probable cause to believe that the hotel room constituted "premises" under Cervantes' control.

A search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment. *Samson*, 547 U.S. at 852–54; *Lopez*, 474 F.3d at 1213–14. That would not be the case, however, if the officers violated California's prohibition against arbitrary, capricious, or harassing searches. *See Samson*, 547 U.S. at 856; *People v. Reyes*, 19 Cal. 4th 743, 753–54 (1998). Cervantes contends that the officers violated this prohibition, but he is mistaken. The officers who orchestrated the search did not know Cervantes and had no prior encounters with him. Nothing in the record suggests that the officers conducted the search for an improper purpose, such as a desire to harass him or out of personal animosity toward him. They appear to have conducted the search solely for legitimate law-enforcement purposes. Nor

did the officers conduct the search at an unreasonable time or in an unreasonable manner. We need not decide whether the fact that the officers searched the room while Cervantes and Farish were away rendered the search invalid, as Cervantes did not argue the point in his opening brief.

Cervantes' main complaint is that the officers lacked even reasonable suspicion to believe that he was engaged in criminal activity or that evidence of wrongdoing would be found in the hotel room. But that merely establishes that this was a suspicionless search. Although searches unsupported by individualized suspicion might be prone to abuse, *see Samson*, 547 U.S. at 865–66 (Stevens, J., dissenting), the Supreme Court has nonetheless held that, without something more, a suspicionless search is lawful if authorized by a parolee's search condition. *Id.* at 857 (majority opinion).

No Fourth Amendment violation having been shown, the district court properly denied Cervantes' motion to suppress the evidence found in his hotel room.

### III

Cervantes also raises one issue related to his sentence. He contends that the district court abused its discretion by imposing a supervised release condition requiring him to submit his "person and property to search or seizure at any time of the day or night, by any law enforcement officer, with or without a warrant, and with or without reasonable or probable cause."

Although warrantless, suspicionless search conditions of this sort should not be routinely imposed, they are not categorically forbidden. *See United States v. Betts*, 511 F.3d

872, 876 (9th Cir. 2007); *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007). District courts may impose such conditions if applicable statutory requirements are met and the search condition is consistent with the Sentencing Commission's policy statements. *See United States v. LaCoste*, 821 F.3d 1187, 1190–91 (9th Cir. 2016). In addition—and what is mainly contested here—the condition "may involve 'no greater deprivation of liberty than is reasonably necessary' to serve the goals of supervised release." *Id.* at 1191 (quoting 18 U.S.C. § 3583(d)(2)).

Cervantes first argues that the district court did not provide adequate notice of the suspicionless search condition. We reject this argument because Cervantes' counsel first raised the suspicionless search condition and objected to it at the sentencing hearing. Once counsel had done so, it would have been redundant for the court to provide "notice" of its intention to impose the condition. *See United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004) (requiring notice of a special condition so that "counsel and the defendant will have the opportunity to address personally its appropriateness").

Cervantes also contends that the suspicionless search condition involves a greater deprivation of liberty than is reasonably necessary because the goals of supervised release could be served just as well by a search condition requiring reasonable suspicion. The district court did not abuse its discretion by concluding otherwise. Cervantes has a lengthy criminal history; he has been convicted in 16 separate cases over a 14-year time span, mostly for offenses related to drugs or counterfeiting. In addition, Cervantes has a lengthy history of violating the conditions of previously imposed terms of supervision—at least 18 prior violations in all. As recounted earlier, Cervantes engaged in the conduct that led to his

convictions in this case while on mandatory supervision, and indeed while already subject to a warrantless, suspicionless search condition. These facts, taken together, justified the district court's belief that Cervantes posed an exceptionally high risk of re-offending during his term of supervised release, and that subjecting him to suspicionless searches would be necessary to mitigate that risk.

**AFFIRMED**.