NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 1 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10221 |
| Plaintiff-Appellee, | D.C. No. 4:19-cr-00179-JAS-EJM-2 |
| v. | |
| SAMANTHA BELLE NUSS, AKA Samantha Nuss, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Submitted November 20, 2020**
Phoenix, Arizona

Before: BYBEE, MURGUIA, and BADE, Circuit Judges.

Samantha Belle Nuss appeals her conviction and sentence for transporting

illegal aliens for profit and conspiracy to transport illegal aliens for profit in

violation of 8 U.S.C. § 1324. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

We affirm Nuss's conviction and remand to the district court to conform the written judgment to the orally imposed sentence.[1]

**1.** Nuss challenges several of the district court's evidentiary rulings.

First, one of the aliens found in Nuss's van testified that Farzana Washington, Nuss's coconspirator, did not seem "surprised" when the aliens entered the van "because [Washington] already knew that she was going to pick [them] up." Nuss argues that the district court erred in admitting this testimony because the witness had no foundation to testify whether Washington knew she was going to pick up the aliens. Because Nuss preserved this challenge, we review for abuse of discretion. *United States v. Gadson*, 763 F.3d 1189, 1199 (9th Cir. 2014).

We agree that the district court erred by admitting the alien's testimony because there is no indication that he had any observations or experience on which to base a statement about Washington's knowledge. *See* Fed. R. Evid. 602. The error, however, was harmless. It was an isolated remark about Washington, not Nuss, and overwhelming evidence supported the jury's finding that Nuss knew about the scheme to transport illegal aliens: for example, one of the women signaled for the group to crouch down in the van; Nuss received a text message

---

[1] The parties are familiar with the factual and procedural background of this matter. Therefore, we recite only those facts necessary for this disposition.

2

advising her of a checkpoint and referencing "refugees"; and the women sped off and led Border Patrol on a high-speed chase.

Second, Nuss asserts that the district court improperly excluded her explanation of alleged coconspirator Mo Shellouff's text message warning her about a checkpoint. She argues that this ruling was inconsistent with the district court's admission of the alien's testimony about whether Washington "knew" they were picking up the aliens. But she provides no analysis of this issue. The district court did not abuse its discretion by excluding this testimony. *See Gadson*, 763 F.3d at 1199.

Third, Nuss argues that the district court erred by allowing the government to introduce testimony that one of the aliens in her van was a minor. Because she failed to object at trial, we review for plain error, *United States v. Torralba-Mendia*, 784 F.3d 652, 658 (9th Cir. 2015), and we find no error. Contrary to Nuss's assertion, the government violated neither the district court's in limine order nor the parties' pretrial agreement by failing to redact an unsolicited, offhand remark that one alien was a minor. Moreover, apart from a passing reference to "media coverage . . . about the separation of children from their parents at the border," Nuss fails to explain why this evidence would have been inflammatory or confusing to a jury.

Fourth, Nuss argues that the district court erred by admitting a text message

3

from Shellouff reading, "Morning sweetheart sorry I was busy," because the message was irrelevant, hearsay, and unduly prejudicial. Because Nuss preserved this challenge, we review for abuse of discretion, *Gadson*, 763 F.3d at 1199, and find no error. The message was relevant as evidence of the close relationship between Nuss and a coconspirator. It was not hearsay because it "was not admitted for the truth of the matter asserted"—that Nuss and her coconspirator were in fact "sweethearts." *See, e.g.*, *United States v. Candoli*, 870 F.2d 496, 508 (9th Cir. 1989). Finally, Nuss offers no reason to conclude that the single use of the nickname "sweetheart" carried prejudicial sexual undertones or would have caused the jury to fixate on a potential romance as opposed to viewing the text message as evidence of a relationship between two coconspirators.

Fifth, Nuss argues that the district court improperly admitted evidence that Shellouff failed to respond to investigative subpoenas because the evidence "said nothing about [her] own behavior." Because she makes this argument for the first time on appeal, we review for plain error. *Torralba-Mendia*, 784 F.3d at 658. Because Nuss cites no authority supporting her assertion that it is "improper" to bring up a "third party's failure/inability/refusal to produce subpoenaed records," she has not shown error, let alone plain error. *United States v. Thompson*, 82 F.3d 849, 856 (9th Cir. 1996).

Sixth, Nuss argues for the first time on appeal that the district court

4

"permitted the government to improperly sexualize [her] and Washington throughout the trial." We review for plain error, *Torralba-Mendia*, 784 F.3d at 658, and find no error. Although several witnesses mentioned the women's attire when explaining why the women raised their suspicion or how they identified the women, these brief descriptions are not the "snowballing sexualization" that Nuss describes. Nuss also argues that the government improperly admitted evidence that she worked at an adult entertainment establishment. The government, however, redacted the testimony stating that Nuss worked there as an "exotic dancer," and her place of employment was relevant because it contradicted Nuss's trial testimony about how she knew Washington.[2]

**2.** Next, Nuss argues that the district court erred by imposing a warrantless and suspicionless search condition of supervised release. Because Nuss did not preserve this issue, we review for plain error. *United States v. Vega*, 545 F.3d 743, 747 (9th Cir. 2008). Relying on *United States v. Cervantes*, 859 F.3d 1175 (9th Cir. 2017), Nuss argues that she "comes nowhere close to the *Cervantes* standard" to justify imposing such a condition. But nothing in *Cervantes* suggests that a minimum criminal history is required to justify the search condition, *id.* at 1184, and we have affirmed a similar condition even when

---

[2] We do not reach Nuss's cumulative error argument because the district court did not commit multiple errors. *United States v. Lindsay*, 931 F.3d 852, 869 (9th Cir. 2019).

5

a defendant had no prior convictions, *see United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007). Considering the nature of Nuss's crimes and her significant criminal history involving drugs, the district court did not plainly err in imposing this condition.

**3.** Finally, Nuss argues that the district court's written judgment differed from its orally imposed sentence in two respects. First, Nuss argues that the district court orally imposed a supervised release condition forbidding her "from consuming any alcohol or alcoholic beverages . . . while she's on supervised release," but stated in its written judgment, "You must not use *or possess* alcohol or alcoholic beverages" (emphasis added). The government concedes the two conditions differ.

Second, Nuss argues that the district court imposed materially different versions of a supervised release condition requiring disclosure of financial information. At the sentencing hearing, the district court stated that it would "order [Nuss] to provide the probation department with any financial information that is requested and to sign, if appropriate, authorizations for release of financial information." The written judgment, in contrast, reads: "You must provide the probation officer with access to any requested financial information and authorize the release of any financial information. *The probation office may share financial information with the U.S. Attorney's Office* [USAO]" (emphasis added).

6

The government argues that the additional provision in the written judgment does not add to Nuss's obligations; it simply notifies her that the probation office may share information with the USAO. We disagree. Although there may be little functional difference between the probation office unilaterally sharing information with the USAO and the probation office sharing that information after requiring Nuss to authorize it to do so, the oral sentence described a different procedure— arguably one more favorable to Nuss's privacy and notice interests—than the written judgment did.[3]

"[W]hen an oral sentence is unambiguous, it controls over a written sentence that differs from it." *United States v. Napier*, 463 F.3d 1040, 1042 (9th Cir. 2006). Because the oral sentence differed materially from the written judgment regarding both the alcohol prohibition and the financial disclosure requirement, we remand for the district court to revise the written judgment in both respects.

**AFFIRMED IN PART AND REMANDED IN PART.**

---

[3] It is unclear whether the district court somehow limited Nuss's obligation to authorize information-sharing by authorizing the probation office to require her signature only "if appropriate." But the parties do not address this issue, and we need not reach it.