**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

RYAN BEAU PATRICK BARRY,

*Defendant - Appellant*.

No. 23-2101

D.C. No.
2:19-cr-00334-
MWF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 11, 2025
Pasadena, California

Filed June 17, 2025

Before: J. Clifford Wallace, Susan P. Graber, and Patrick J.
Bumatay, Circuit Judges.

Opinion by Judge Bumatay;
Concurrence by Judge Wallace;
Concurrence by Judge Graber

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's denial of Ryan Barry's motion to suppress evidence found in a warrantless search of an apartment in a case in which the panel considered whether police officers had probable cause to believe that Barry, a probationer who was subject to warrantless search conditions, resided at the apartment.

The panel held that the search was consistent with the Fourth Amendment and the standard articulated in *United States v. Grandberry*, 730 F.3d 968 (9th Cir. 2013), for application of the parolee-search-condition exception to the Fourth Amendment's proscription on warrantless searches. For the exception to apply under California law, law enforcement officers must have probable cause to believe that the parolee is a resident of the residence to be searched, which exists if an officer of reasonable caution would believe, based on the totality of the circumstances, that the parolee lives there.

The panel held that the facts available to the officers established probable cause that Barry resided at the apartment. Distinguishing *Grandberry* in which the circumstances couldn't establish probable cause, the panel explained that in this case (1) officers could reasonably construe Barry's answers and reactions to questions as an admission that he resided at the apartment, (2) an anonymous tipster's information more closely tied Barry to the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

apartment, and (3) Barry's possession of a key to the apartment more strongly shows residence.

The panel held that the district court did not abuse its discretion in declining to hold an evidentiary hearing.

Judge Wallace, joined by Judge Bumatay, concurred. He wrote separately to state why this court's cases in this area, like *Grandberry*, should be revisited en banc. As they stand, these cases and the probable-cause-as-to-residence rule stretch the Fourth Amendment to provide individuals on supervised release, probationers, and parolees safe houses in which to recidivate free from the oversight to which they agreed, and create tension with Fourth Amendment standing.

Judge Graber concurred. She wrote separately to express disagreement with Judge Wallace's concurrence. *Grandberry*'s outcome was, and is, compelled by the parole search conditions imposed by the State of California. The warrantless search condition was limited to the parolee's residence; if a location is not the parolee's residence, then the ordinary constitutional principles that apply to searching premises apply. The solution to her colleagues' concern lies with the state legislatures and state courts.

## COUNSEL

Jenna W. Long (argued), Assistant United States Attorney, Terrorism and Export Crimes Section; Elizabeth S.P. Douglas, and David R. Friedman, Assistant United States Attorneys; Cameron L. Schroeder, Assistant United States Attorney, Chief, National Security Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Alexis Haller (argued), Law Office of Alexis Haller, Aptos, California, for Defendant-Appellant.

## OPINION

BUMATAY, Circuit Judge:

At issue here is whether police officers had probable cause to believe that Ryan Barry, a probationer who was subject to warrantless search conditions, resided at an apartment they searched. Barry appeals from the district court's denial of his motion to suppress the evidence found in this search. Because the search was consistent with the Fourth Amendment and with our holding in *United States v. Grandberry*, 730 F.3d 968 (9th Cir. 2013), we affirm.

## I.

In November 2018, an anonymous tipster called the Los Angeles Police Department ("LAPD") to report that a person named "Ryan" sold drugs out of an apartment at 14436 Emelita Avenue, Apartment B, in Van Nuys, California ("Emelita apartment"). The caller added that "Ryan" drove

a red convertible Ford Mustang. The LAPD assigned Officer Giovanni Espinoza to investigate the tip.

After searching several databases, Officer Espinoza learned about a "Ryan Beau Patrick Barry" who was on post-release community supervision for felony firearm and drug convictions. Barry's terms of supervision included a warrantless search condition, meaning that his person, property, and residence could be searched without a warrant. Officer Espinoza found that Barry had registered a different residential address with his probation officer—not the Emelita apartment. He also discovered that Barry possessed no valid driver's license and that he could not drive a motor vehicle legally at the time.

Later, Officer Espinoza decided to surveil the Emelita apartment. When Officer Espinoza arrived, he observed a red convertible Mustang parked close to a walkway that led to the Emelita apartment. He then saw Barry appear in the walkway and approach the Mustang. Barry got into the car and drove to a nearby gas station; Officer Espinoza followed.

At the gas station, Barry parked and sat in the driver's seat for five to ten minutes. Officer Espinoza then approached, identified himself as law enforcement, and directed Barry to get out of the car. When Barry did so, Espinoza saw him holding a clear plastic "baggie" consistent with drug packaging. Officer Espinoza ordered Barry to hand over the bag, and Barry complied. The bag contained a substance resembling methamphetamine. Seeing this, Officer Espinoza handcuffed Barry and told him that they were "going to search his apartment on Emelita Avenue next." Barry did not act surprised, nor did he deny that he was living at that location. Officer Espinoza asked "who else lived there," and Barry replied that his girlfriend did.

Barry explained that his girlfriend was asleep on the couch and repeatedly asked Officer Espinoza not to scare her when entering the apartment. Officer Espinoza next asked whether there were dogs or weapons at the Emelita apartment. Barry stated that there were not. Finally, to avoid damaging the door, Officer Espinoza asked Barry for a key to the apartment. Barry told Officer Espinoza where his keychain was and showed him the key to the apartment's front door.

A search of Barry's car revealed several pouches of illegal drugs, a scale with drug residue, and a loaded pistol. The later search of Barry's apartment revealed his girlfriend asleep on the couch, along with additional firearms, ammunition, drugs, and related paraphernalia. After the search, Barry told Officer Espinoza that he had lived at the Emelita apartment with his girlfriend for around one month and had been selling drugs out of the residence.

Barry was charged with several counts of possession with intent to distribute the narcotics found in his car and apartment under 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of firearms and ammunition under 18 U.S.C. § 922(g).

Barry moved to suppress all evidence seized from his car and apartment, arguing that the search violated the Fourth Amendment. The district court denied Barry's motion to suppress and his request for an evidentiary hearing. Barry then entered a conditional plea agreement, reserving the right to appeal the suppression motion. He was sentenced to 180 months' imprisonment, the mandatory minimum. Barry now brings this appeal challenging the validity of the search of the Emelita apartment. He argues that the officers lacked

probable cause to believe that he resided at the Emelita apartment.

We review the district court's denial of a motion to suppress de novo, and the underlying factual findings for clear error. *United States v. Peterson*, 995 F.3d 1061, 1064 (9th Cir. 2021). We review the district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007).

## II.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, warrantless searches are unreasonable under the Fourth Amendment, "subject only to a few specifically established and well delineated exceptions." *United States v. Estrella*, 69 F.4th 958, 964 (9th Cir. 2023) (simplified). One such exception is the "search of a parolee that complies with the terms of a valid search condition." *United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017). For the parolee-search-condition exception to apply under California law, "law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Grandberry*, 730 F.3d at 973 (simplified). "[P]robable cause as to residence exists if an officer of reasonable caution would believe, based on the totality of the circumstances, that the parolee lives at a particular residence." *Id.* at 975 (simplified). Probable cause "is not a high bar[.]" *Kaley v. United States*, 571 U.S. 320, 338 (2014). "It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* (simplified).

That standard is met here.

## A.

Start with *Grandberry*. In that case, after receiving an anonymous tip that "someone was selling crack cocaine out of a garage," officers began surveilling the area. *Id.* at 971. During this surveillance, officers witnessed the defendant conduct a drug deal in front of the garage and later followed him to a nearby apartment building about two blocks away. *Id.* Focusing their surveillance efforts on the apartment building, officers observed the defendant engage in additional conduct suggestive of drug dealing. *Id.* at 971–972. Further investigation yielded minimal additional information, so the officers returned to arrest the defendant eleven days after observing the drug deal in front of the garage. *Id.* at 972. Once he was in custody, an officer told the defendant, "You are on parole with search conditions. We are going to search your place now"—without identifying the apartment. *Id.* The defendant responded, "Do what you gotta do." *Id.* The officers then searched the apartment, discovering drugs and a loaded firearm. *Id.*

*Grandberry* identified several factors to guide the probable-cause analysis, including whether:

> (1) the parolee did not appear to be residing at any address other than the one searched; (2) the officers had directly observed something that gave them good reason to suspect that the parolee was using his unreported residence as his home base; (3) the parolee had a key to the residence in question; and (4) either the parolee's co-

> resident or the parolee himself identified the residence in question as that of the parolee.

*Id.* at 976 (simplified). *Grandberry* acknowledged that "the ultimate question whether probable cause exists is 'fact-intensive,'" and it cannot be reduced to "cross-checking a list of factors." *Id.* And the court always must examine "the totality of the circumstances." *Id.* at 975 (simplified).

Under the specific facts of the case, *Grandberry* determined that the circumstances couldn't establish probable cause that the defendant lived at the searched apartment. *Id.* at 977. For example, officers never identified what apartment they planned to search and referred only generically to the defendant's "place." *Id.* Thus, the defendant's response of "[d]o what you gotta do" simply "was not an admission of anything." *Id.* Furthermore, *Grandberry* found significant that no one, including the confidential informant, had reported that the defendant lived at the apartment. *Id.* at 979. Finally, *Grandberry* found multiple contrary factors "point[ing] strongly" against the defendant's residence at the apartment, such as the defendant's lack of presence at the apartment during the officers' nighttime surveillance. *Id.* at 980.

**B.**

Here, officers gathered more facts supporting their reasonable belief that Barry resided at the Emelita apartment. We thus conclude that officers had probable cause to search the Emelita apartment, and we affirm the denial of the motion to suppress.

First, officers could reasonably construe Barry's answers and reactions to Officer Espinoza's questions as an admission that he resided at the Emelita apartment. When

Officer Espinoza informed Barry that officers would search "*his apartment* on Emelita Avenue," he didn't express any surprise or deny living there.  Officer Espinoza further asked, "*who else* lived" at the Emelita apartment.  Again, rather than reject the officer's premise that he lived at the apartment, Barry simply answered that "his girlfriend . . . lived there and that she was asleep there at the time."  Barry then showed intimate familiarity with the residence—offering that no dogs were present in the apartment and repeatedly asking Officer Espinoza "to not scare his girlfriend in the apartment."

These facts reasonably confirmed the officers' belief that Barry resided at the Emelita apartment.  Barry's affirmative responses about who lived at the Emelita apartment contrast with the defendant's in *Grandberry*, which was "entirely ambiguous"—"[d]o what you gotta do"—to the officer's vague reference to searching "your place." *Id.* at 977.  And unlike in *Grandberry*, Officer Espinoza's explicit reference to the apartment "on Emelita Avenue" left no question about which residence officers planned to search.  Thus, by responding to Officer Espinoza's questions with information indicating that he and his girlfriend lived at the Emelita apartment, Barry "identified the residence in question" as his own. *See id.* at 976 (simplified).

Second, the anonymous tipster's information more closely tied Barry to the Emelita apartment.  The tipster identified a person named "Ryan," who drove a "red convertible Mustang" and sold drugs directly out of the Emelita apartment.  Officer Espinoza's observations at the Emelita apartment confirmed the description from the tipster—he found a Ryan Barry driving a red Mustang right outside the apartment.  This specificity goes further than the anonymous tip from *Grandberry*, which merely reported

that "someone" was selling drugs from a *garage* behind an apartment. *Id.* at 971. Thus, Officer Espinoza possessed "affirmative and substantial bas[es] for concluding that [Barry] did not actually live" at the address he had reported to probation. *See id.* at 977.

Third, along with all the other information gathered, Barry's possession of a key to the Emelita apartment more strongly shows residence. Barry provided Officer Espinoza with his keychain and showed him which key would open the Emelita apartment's door. True, "standing alone," the "possession and use of a key" may not establish probable cause. *Id.* at 979. But although the officers in *Grandberry* also obtained a key from the defendant, they did not obtain any admissions of residence from the defendant or the corroborating facts present here. *See id.* at 979–80. In light of the interactions with Officer Espinoza, Barry's possession and use of a key to the Emelita apartment cements the reasonable belief that he resided at that apartment.

All in all, the factual differences distinguish this case from *Grandberry*. Considering the totality of the circumstances, the facts available to Officer Espinoza established probable cause to believe that Barry resided at the Emelita apartment.

## C.

Barry also challenges the district court's failure to conduct an evidentiary hearing on his motion to suppress. An evidentiary hearing is necessary only "when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Here, Barry does not contest the facts of his interactions with Officer Espinoza. Instead, Barry

points to Officer Espinoza's alleged inconsistencies on how he learned of Barry's name after receiving the anonymous tip. Barry faults Officer Espinoza for vaguely referencing "department resources." But Barry hasn't shown with sufficient "definiteness, clarity, and specificity" how this potential ambiguity is relevant to the probable cause determination. *See id.* No matter how Officer Espinoza learned of Barry's name at the start of the investigation, the officer's observations and interactions with Barry gave him probable cause to search the Emelita apartment. This dispute doesn't undermine the fact that Officer Espinoza received a tip regarding drug trafficking at the Emelita apartment, that he observed Barry at the Emelita apartment consistent with the tip, that he discovered Barry with drugs, and that Barry all but confirmed he resided at the Emelita apartment. Thus, the district court didn't abuse its discretion in declining to hold an evidentiary hearing.

## III.

For these reasons, we affirm the denial of the motion to suppress.

**AFFIRMED**.

WALLACE, Circuit Judge, concurring, with whom BUMATAY, Circuit Judge, joins:

I join the court's opinion in full.  I write separately to state specifically my reasons why our cases in this area should be revisited.  As they stand, these cases stretch the Fourth Amendment to provide individuals on supervised release, probationers, and parolees[1] safe houses in which to recidivate free from the oversight to which they agreed.

## I.

To understand the problems arising from our court's stringent probable-cause-as-to-residence requirement, a brief review of our caselaw's evolution is helpful.

In 1979, recognizing that a California "state parolee may be searched, pursuant to a consent provision in his parole terms, if his parole officer reasonably believes a search is appropriate," we upheld a search where "[t]he observations supported a reasonable belief" that the parolee lived at the residence in question. *United States v. Dally*, 606 F.2d 861, 863 (9th Cir. 1979).  Twenty-six years later, we held that "reasonable belief" in the parole-search context is the same as probable cause, and therefore "law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched" to "protect[] the interest of third parties." *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

---

[1] In this context, there is no need to differentiate between these groups— the relevant factor is their severely diminished expectation of privacy. *See United States v. Dixon*, 984 F.3d 814, 821 n.3 (9th Cir. 2020); *United States v. Cervantes*, 859 F.3d 1175, 1180 (9th Cir. 2017).

The next year, we applied this standard to reverse a district court's ruling that law enforcement had probable cause to believe that the defendant, a probationer, lived at the apartment they searched. *United States v. Howard*, 447 F.3d 1257, 1268 (9th Cir. 2006). Despite a confidential informant telling officers that the defendant lived in an apartment complex at a particular address, which was corroborated by the complex's manager and the president of the condominium owner's association, we held that:

> [T]he police do not have probable cause to believe that a parolee lives at an unreported residence when: (1) visits to the parolee's reported address suggested that the parolee continued to reside there; (2) the police watched the address in question for a month and did not see the parolee there; (3) no credible witnesses had seen the parolee at the address in question for some time before the search; (4) the parolee did not have a key to the residence in question; and (5) neither the parolee nor his purported co-resident admitted to his residence there.

*Id.* at 1259, 1268.

Judge Noonan concurred, dubitante. While he agreed that *Motley* required the outcome set forth in the majority opinion, he nevertheless could not "suppress [his] doubt that circuit precedent conforms with the constitution as interpreted by the United States Supreme Court." *Id.* at 1268 (Noonan, J., concurring). Judge Noonan explained that the practical result of the court's decision was that the defendant "is given a safe house where, as long as he has a cooperative

girlfriend, he can stash his gun.  That safety zone is surely not what the majority wants to create but it is the result of the rigid application of our precedents without attention to the perspectives on reasonableness introduced by [*United States v. Knights*, 534 U.S. 112 (2001)]." *Id.* at 1269.  Judge Noonan was prescient.

Enter *United States v. Grandberry*, 730 F.3d 968 (9th Cir. 2013).  An anonymous tipster told law enforcement that someone was selling crack cocaine out of a garage behind a Los Angeles address.  *Id.* at 971.  An officer contacted a reliable informant, who linked Lambert Grandberry, a California state parolee, to that garage.  *Id.* While reviewing the database that listed Grandberry as a parolee with search conditions, officers learned that Grandberry was registered as living at a different address. *Id.*  Officers then drove past the garage with the informant, who identified Grandberry's parked car.  *Id.*

Officers continued surveillance and saw Grandberry use keys to enter an apartment two blocks from the garage between six to ten times over a twelve-day period.  *Id.* Officers decided to arrest Grandberry, approaching him and identifying themselves as police as he exited his car upon returning to the apartment building.  *Id.* at 972.  Grandberry tossed his keys to the ground and ran away.  *Id.*  After he was detained, an officer told Grandberry, "You are on parole with search conditions.  We are going to search your place now," to which Grandberry allegedly replied, "Do what you gotta do."  *Id.*  Officers used Grandberry's discarded key to enter the apartment, where they discovered cocaine and a loaded gun.  *Id.*

Our court affirmed the district court's grant of Grandberry's motion to suppress [2] because officers lacked probable cause to believe Grandberry lived in the searched apartment. *Id.* at 981–82. We recognized that a probable cause analysis must be "fact-intensive," "based on the totality of [the] circumstances," and "cannot be answered by cross checking a list of factors." *Id.* at 975–76 (citations omitted). But we also stressed that this is a "relatively stringent" standard requiring "strong evidence" based on the factors listed in *Howard*. *Id.* at 976 (citations omitted).

Rattling through those factors, our court found Grandberry's response "entirely ambiguous" rather than a concession that the apartment was his, notwithstanding that Grandberry made the statement immediately outside of the apartment in response to law enforcement officers telling Grandberry they were going to search "[his] place." *See id.* at 977. Nor was officers' multi-day surveillance sufficient—rather it was "very peripheral" considering that Grandberry reported another residential address as his own. *Id.* And while "Grandberry's repeated presence at the Arlington apartment [was] certainly entitled to some weight in the probable cause analysis," it was not entitled to much because officers never observed Grandberry stay overnight. *Id.* at 978–79. Lastly, minimizing the other evidence linking Grandberry to the apartment, we acknowledged "the relevance of a parolee's possession and use of a key," but

---

[2] The district court described our cases in this area as leading to an "illogical result" and was "firmly convinced" that the evidence in question should not be suppressed based on Supreme Court precedent but nevertheless felt bound to suppress the evidence based on our precedent. *United States v. Grandberry*, No. CR 10-262 SVW, 2011 WL 13143492, at *4–5 (C.D. Cal. Nov. 23, 2011), *aff'd*, 730 F.3d 968 (9th Cir. 2013).

stated that "such a fact, standing alone, does not establish probable cause." *See id.* at 979.

Judge Watford, concurring, echoed Judge Noonan in concluding that our caselaw in this area "is unsound and warrants reexamination." *Id.* at 983 (Watford, J., concurring). Given Grandberry's search conditions, he "ha[d] no legitimate expectation of privacy in his own home." *Id.* Nevertheless, Judge Watford lamented, our cases grant parolees a greater privacy interest in the residences of others, "[a]llowing parolees to establish these sorts of safe houses," which "surely frustrates the State's legitimate interest in supervising parolees to reduce recidivism, protect public safety, and promote reintegration into productive society." *Id.* at 984.

Unfortunately, our court has not heeded Judge Noonan's and Judge Watford's clarion calls, and this line of problematic cases persists. For example, our court recently held "that before conducting a warrantless search of a vehicle pursuant to a supervised release condition, law enforcement must have probable cause to believe that the supervisee owns or controls the vehicle to be searched." *Dixon*, 984 F.3d at 822, citing *Motley*, 432 F.3d at 1080.

Moreover, this issue extends outside our circuit, as the Eighth Circuit recently adopted our probable-cause-as-to-residence requirement. *United States v. Thabit*, 56 F.4th 1145, 1151 (8th Cir. 2023), citing *Motley*, 432 F.3d at 1079. Other courts, however, have cast doubt on our approach. Just last year, the Supreme Court of Arkansas expressly rejected the Eight Circuit's (and our) reasoning and held that "law enforcement need only have a reasonable suspicion that the probationer is residing in the place to be searched for officers to execute a warrantless search pursuant to a

residence-search waiver." *State v. Bailey*, 687 S.W.3d 819, 823 (Ark. 2024). And earlier this year, the Seventh Circuit acknowledged both our and the Eighth Circuit's probable cause requirement but expressly left open the question of what level of certainty is required. *United States v. Dixon*, No. 23-2427, --- F.4th ---, 2025 WL 1322581, at \*8–9 (7th Cir. May 7, 2025).

## II.

With our caselaw's development in mind, I turn to my practical and doctrinal concerns with these cases in the hope that our court will, in the appropriate case, revisit the issue en banc.

Programs such as supervised release, probation, and parole, which reduce a criminal's length of incarceration, are important tools for successfully rehabilitating criminals and reintegrating them into society as productive citizens while balancing the need for public safety. *See Samson v. California*, 547 U.S. 843, 855 n.4 (2006); *United States v. Knights*, 534 U.S. 112, 120–21 (2001). But a lesser prison sentence or avoiding incarceration all together comes with a cost. Indeed, when entering such a program in California, a person consents "to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term." *People v. Robles*, 3 P.3d 311, 315 (Cal. 2000) (citations omitted). Such searches "aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation. By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers." *Id.*

The practical effect of our probable-cause-as-to-residence rule and cases like *Grandberry*[3] is, as two of my former colleagues have aptly put it, to create "safe house[s]" for recidivists to hide their renewed illicit activities from supervising law enforcement, frustrating the public safety goals of such programs. *Howard*, 447 F.3d at 1269 (Noonan, J., concurring); *Grandberry*, 730 F.3d at 984 (Watford, J., concurring).

Doctrinally, the probable-cause-as-to-residence rule creates tension with Fourth Amendment standing. "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search[.]"[4] *Byrd v. United States*, 584 U.S. 395, 410–11 (2018). "Fourth Amendment standing is 'not distinct from the merits' of a Fourth Amendment claim and 'is subsumed under substantive Fourth Amendment doctrine.'" *Villanueva v. California*, 986 F.3d 1158, 1165 n.5 (9th Cir. 2021), quoting *Byrd*, 584 U.S. at 410.

Someone like Barry, who typically would have standing to challenge a search of his residence, knowingly relinquished that expectation of privacy when he agreed to the terms of his post-release community supervision. Given that Barry generally lacks standing to challenge the search of others' residences, it appears that law enforcement would

---

[3] Even if probable cause were the proper standard, I question whether *Grandberry*'s strict probable cause analysis is consistent with Supreme Court precedent. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause, we have often told litigants, is not a high bar[.]").

[4] This is true both under the *Katz* test and the common-law trespassory test. *Chong v. United States*, 112 F.4th 848, 862 (9th Cir. 2024).

be free to conduct a search related to Barry in any residence, provided that they comply with the relevant statutory provisions. No, says *Grandberry*, because Barry may have standing as an overnight guest in the residence of another. 730 F.3d at 973; *see also id.* at 985–86 (Berzon, J., concurring). That does not make sense.[5] As Judge Watford stated, Barry should only have "the Fourth Amendment rights he would have in his own home." *Id.* at 983 (Watford, J., concurring), quoting *United States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007).

Now that we have extended this line of cases to cars, the standing issue becomes even more perplexing. In *Dixon*, we remanded for the district court to consider whether law enforcement officers had probable cause to believe that the car at issue was owned or controlled by the defendant, who was on supervised release. *Dixon*, 984 F.3d at 823. But if the car was the defendant's, the search was covered by his supervised release condition. And if the car was not the defendant's, then how did he have standing to challenge its search? *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (holding defendant lacked Fourth Amendment standing to challenge search of friend's car in which the defendant was a passenger).

The answer, from *Motley* to *Dixon*, has been that the probable-cause-as-to residence (or car ownership) rule is required to protect the privacy of third parties. *See Motley*,

---

[5] The Seventh Circuit has most clearly addressed this issue and declined to adopt a special form of standing where the government invokes search authority from a supervisee's release conditions. *See Dixon*, 2025 WL 1322581 at *5 n.3; *see also Chong*, 112 F.4th at 864; *United States v. Dixon*, No. 18-CR-00319-CRB, 2018 WL 6069941, at *4–5 (N.D. Cal. Nov. 20, 2018), *vacated and remanded on other grounds*, 984 F.3d 814 (9th Cir. 2020).

432 F.3d at 1080; *Dixon*, 984 F.3d at 822. That reasoning could be applied to *every* search—doing away with Fourth Amendment standing would undoubtedly better protect the privacy rights of third parties.

The Supreme Court rejected that argument, recognizing that the societal cost of excluding relevant and reliable evidence outweighs third-party privacy concerns, so I see no reason why such a justification merits our present rule. *See Rakas*, 439 U.S. at 137 ("Conferring standing to raise vicarious Fourth Amendment claims would necessarily mean a more widespread invocation of the exclusionary rule [the application of which] exacts a substantial social cost. . . . Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected."). Furthermore, as Judge Watford previously expressed, there are other avenues third parties may use to vindicate their Fourth Amendment rights. *Grandberry*, 730 F.3d at 983–84 (9th Cir. 2013) (Watford, J., concurring).

Our probable-cause-as-to-residence rule has also been justified as being based on the particulars of California's supervision provision. *Id.* at 985 (Berzon, J., concurring). First, individuals like Barry agree to the provision that "[y]ou, your residence, and any other property under your control may be searched without a warrant." In *Grandberry* we elected to read that provision narrowly, rejecting the government's argument that "property under your control" justified the search of the apartment even if it was not Grandberry's residence. *Id.* at 981; *see also Cervantes*, 859 F.3d at 1182. Second, and more significantly, California courts have expressly rejected our probable-cause-as-to residence rule, adopting instead a rule that "an officer executing . . . a probation or parole search may enter a dwelling if he or she has only a 'reasonable belief,' falling

short of probable cause to believe, the suspect lives there[.]" *People v. Downey*, 130 Cal. Rptr. 3d 402, 409 (Cal. Ct. App. 2011).

Keeping in mind that "[t]he touchstone of the Fourth Amendment is reasonableness," *Samson*, 547 U.S. at 855 n.4, most would think that individuals like Barry relinquished any expectation of privacy in whatever abode they spend their time. *See* Orin S. Kerr, *Four Models of Fourth Amendment Protection*, 60 STAN. L. REV. 503, 508–09 (2007) (under the "probabilistic model" of the Fourth Amendment "a reasonable expectation of privacy depends on the chance that a sensible person would predict that he would maintain his privacy."). Our strict probable cause requirement appears to me unreasonable and unrequired by the Fourth Amendment. I hope our court soon takes the appropriate case en banc to revisit this important issue and consider whether a lesser showing than probable cause [6] would better serve society's compelling goals in the successful supervision of individuals like Barry. "That the Fourth Amendment should not offer special sanctuary to felons serving part of their sentence is an outcome not to be regretted." *Howard*, 447 F.3d at 1269 (Noonan, J., concurring).

---

[6] Our cases in this area rely on our circuit's general rule that equates reasonable belief with probable cause. There is a considerable circuit split on that question. Many of our sister circuits have held that reasonable belief requires a lesser showing than probable cause. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *United States v. Vasquez-Algarin*, 821 F.3d 467, 474 (3d Cir. 2016) (collecting cases). Outside the context of search conditions, I take no position on our general rule.

GRABER, Circuit Judge, concurring:

I concur in full in the panel's opinion but write separately to express respectful disagreement with Judge Wallace's concurrence. My colleagues' discomfort with the holding in United States v. Grandberry, 730 F.3d 968, 973 (9th Cir. 2013), which in turn relied on United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006), overruled in part on other grounds by United States v. King, 687 F.3d 1189 (9th Cir. 2012), is misplaced. Grandberry's outcome was, and is, compelled by the parole search conditions imposed by the State of California. See Grandberry, 730 F.3d at 985–86 (Berzon, J., concurring); see also United States v. Payne, 99 F.4th 495, 502 (9th Cir. 2024) (noting that California law mandates the general warrantless search condition), cert. denied, 145 S. Ct. 605 (2024).

Here, as in Grandberry, the warrantless-search condition was limited to the parolee's "residence." Grandberry, 730 F.3d at 971 (emphasis added). If a location is not the parolee's residence, then the ordinary constitutional principles that apply to searching premises control. For that reason, law enforcement officers in California must first ascertain whether a location is the parolee's "residence." See Payne, 99 F.4th at 502 (citing the rule that the officer conducting the search must have probable cause to believe that the person to be searched is on parole and that an applicable parole condition authorizes the search at issue); see also Samson v. California, 547 U.S. 843, 852 (2006) (relying on the specific terms of a parole search condition in analyzing the constitutionality of a search). If the location to be searched is the parolee's "residence," officers can search that location. If it is not the parolee's "residence,"

and no other justification for a search is present, they cannot. For that reason, Grandberry was decided correctly.

The solution to my colleagues' concern lies with state legislatures and state courts. Search conditions can alter a parolee's reasonable expectation of privacy only if they are clear and unambiguous. See Samson, 547 U.S. at 849, 852 (holding that a parolee's expectation of privacy was significantly diminished because the search conditions were clearly and unambiguously communicated to him). If state legislatures and state courts are dissatisfied with the policy implications of Grandberry, they can impose broader parole conditions, as either standard or special conditions, to allow warrantless and/or suspicionless searches of premises in addition to the "residence" of a parolee. See e.g., United States v. Johnson, 875 F.3d 1265, 1275 (9th Cir. 2017) (noting that the parole conditions at issue swept broadly enough to cover a cell phone search and distinguishing cases with narrower search conditions).